## ISAACS v. TERRY & TENCH CO.

(Supreme Court, Appellate Division, First Department. April 10, 1908.)

1. SALES—REMEDIES OF SELLER.

On breach of an executory contract of sale, seller may store the property for buyer and sue for the purchase price, sell it as agent for buyer, and recover any deficiency, or keep the property, and recover the difference between the contract price and the market value.

2. SAME—ACTIONS FOR DAMAGES—MEASURE—GOODS TO BE MANUFACTURED.

The measure of damages for breach of a contract to purchase iron or steel beams, to be manufactured by another than the seller according to specifications, is the contract price less the cost of fulfilling the contract by the seller.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 1098, 1106.]

3. SAME.

In an action for breach of a contract to purchase iron or steel beams to be manufactured, the profit on a sale to another, though made after commencement of the action, should be deducted from the seller's damage.

Appeal from Appellate Term.

Action for breach of contract by Herman Isaacs against the Terry & Tench Company. From a judgment of the Appellate Term (56 Misc. Rep. 586, 107 N. Y. Supp. 136), affirming a judgment of the City Court of the city of New York for plaintiff, and an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

George H. D. Foster, for appellant.
Herbert J. Hindes, for respondent.

McLAUGHLIN, J.   The correspondence between the parties established an agreement by the defendant to purchase of the plaintiff certain iron or steel beams, to be used in the construction of a building in the city of New York, at $1.85 per 100 pounds on S. S. Dock, New York, specifications to be furnished by defendant.   Parol evidence was introduced to determine the amount contracted for, which the jury found to have been 500 tons.   The plaintiff admits having sold 200 tons of the beams with the permission and consent of the defendant, and this action was brought to recover damages for the defendant's refusal to furnish specifications for, or to accept and pay for, the remaining 300 tons.   The evidence introduced by the plaintiff at the trial, though somewhat unsatisfactory, tended to establish that in January, 1906, he had ordered from certain manufacturers in Germany a large quantity of beams, to be made according to specifications to be furnished, and to be paid for as manufactured.   Upon making the contract with the defendant in May, 1906, he checked off the 500 tons called for by the contract against the amount he had ordered from the mills.   In August, 1906, the defendant repudiated its contract—no specifications having been furnished—and this action was commenced in September following.   There was also evidence from which the jury might, and apparently did, find that the plaintiff made a bona fide effort to secure an order for the 300 tons which the defendant refused to take, and finally succeeded in selling the same as part of a larger order to a firm in San Francisco, Cal.   The 300 tons were delivered f. o. b. steamship Antwerp, for which he received $10,200, or $900 less than the contract price with the defendant f. o. b. dock New York.   The jury found in favor of the plaintiff for $900.   Judgment was entered thereon, the validity of which is attacked upon the ground that the measure of damage adopted was improper.

The general rule is well settled that, upon the breach of an executory contract for the sale of a chattel, the vendor has three remedies, viz.: To store the property for the vendee and sue for the purchase price; to sell it as agent for the vendee and recover any deficiency; or to keep the property and recover the difference between the contract price and the market value.   Van Brooklen v. Smeallie, 140 N. Y. 70, 35 N. E. 415.   Where, however, the contract is for the sale of goods to be manufactured, and it is broken by the vendee before the goods have been manufactured, this rule does not apply.   Then the measure of damages is the difference between the cost of manufacture and delivery and the contract price.   Hinckley v. Pittsburgh Steel Co., 121 U. S. 264, 7 Sup. Ct. 875, 30 L. Ed. 967;  Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953;  Todd v. Gamble, 148 N. Y. 382, 42 N. E. 982, 52 L. R. A. 225;  Kelso v. Marshall, 24 App. Div. 128, 48 N. Y. Supp. 728;  Belle of Bourbon Co. v. Leffler, 87 App. Div. 302, 84 N. Y. Supp. 385;  Lehmaier v. Standard Specialty & Tube Co. (App. Div.) 108 N. Y. Supp. 402;  Page on Contracts, § 1591.   Much of defendant's evidence was devoted to showing the market price for beams;  but it is evident that in the present case the rule as to market price does not apply;  for, while there may have been a recognized price per ton for beams, those contracted for were to be used in a particular building, and were to be made according to specifications, which were never

furnished, and it is apparent that the plaintiff could not have had them manufactured without the same. Under such circumstances the measure of plaintiff's damage is plainly the value of his contract; that is, the contract price less the cost of fulfilling on his part. Hinckley v. Pittsburgh Bessemer Steel Co., supra, was a case much like the one before us. There the plaintiff in error had agreed to purchase from the steel company a quantity of steel rails to be manufactured according to directions. Upon his refusal to perform it was held that the company was not obliged to manufacture the rails and sell them at the market price, but could recover the contract price less the cost to manufacture.

In Roehm v. Horst, supra, it was said:

"If the vendor has to buy instead of to manufacture, the same principle prevails, and he may show what was the value of the contract by showing for what price he could have made subcontracts, just as the cost of manufacture in the case of a manufacturer may be shown."

It is suggested by the defendant that in the present case, since the beams were to be made according to specifications, the cost of production is entirely problematical. It appears, however, that such beams are made in certain sizes according to a standard basis, and, if sizes above or below the basis are desired, an extra charge is made. The plaintiff, however, introduced evidence tending to show a reduction of his damage. He testified he had arranged to fill his contract with the defendant from an order which he had given to a manufacturer in Germany, and that he afterwards sold the 300 tons, which defendant refused to take. This was competent evidence, although the sale was made after the commencement of the action (Ranscher v. Cronk, 50 Hun, 602, 3 N. Y. Supp. 470), and the profit which he made upon this sale should be deducted from his damage. If the sale had been made f. o. b. S. S. Dock New York, and there was no profit realized on the sale, then I am inclined to think the judgment should be affirmed; but it was made f. o. b. steamship Antwerp, and it does not appear but that the plaintiff made as large a profit by such sale as he would have made had the defendant kept its contract. If so, only nominal damages could be recovered. It did not appear what it would have cost the plaintiff to transport the beams to New York, where, under the contract with the defendant, delivery was to be made. Having made the sale f. o. b. steamship Antwerp at only $900 less than the contract price, plaintiff's damage must have been less than $900, since he thus escaped paying the freight to New York and possibly the duty on the beams. It is not quite clear from the record whether the amount he received— $10,200 was the net price after he had paid the duty or whether the duty was to be paid by the purchaser, though the former would seem to be the case.

In any view, therefore, it seems to me an improper measure of damage was adopted, and for that reason the determination of the Appellate Term and the judgment and order of the City Court must be reversed and a new trial ordered, with costs to appellant to abide event.

HOUGHTON and SCOTT, JJ., concur.

LAUGHLIN, J. (concurring). I concur in a reversal of the judgment, but not in all of the grounds assigned therefor in the opinion of Mr Justice McLAUGHLIN. The plaintiff was to manufacture or procure the manufacture of steel beams and channels according to specifications to be furnished by the defendant. The manufactured goods were to aggregate in weight 500 tons. The defendant furnished no specifications; but, according to the evidence introduced on behalf of the plaintiff, authorized the plaintiff to dispose of 200 tons of the steel which was done. The action is based upon evidence showing a total breach of the balance of the contract by the defendant before the manufacture of the goods, as it appears that the defendant refused to furnish specifications by which the goods could be manufactured to fill the order. The facts present a case for the application of the rule that, upon a total breach by a vendee of an executory contract to manufacture goods before the manufacture thereof, the measure of the vendor's damages is the difference between the price agreed to be paid for the manufactured article by the vendee and the reasonable cost to the vendor of filling the order. Belle of Bourbon Co. v. Leffler, 87 App. Div. 302, 84 N. Y. Supp. 385, and cases cited. On the first trial the plaintiff on this theory recovered a verdict of $1,260, which was reversed, I think erroneously, by the Appellate Term (103 N. Y. Supp. 103) on the ground that it did not appear that plaintiff had incurred any liability for the purchase or manufacture of the steel to fill the order. Prior to making the contract with the defendant, the plaintiff had contracted for the purchase of 500 tons of steel to be manufactured as directed in Germany. The plaintiff thereafter made the contract with the defendant for the sale of the same quantity of manufactured steel as he had previously ordered in Germany. At the time of the breach of the contract by the defendant, the plaintiff contemplated filling the order under his contract with the German mills, but that contract was in no way made a part of his contract with the defendant, and the latter, therefore, was a stranger thereto. After the first trial of this case the plaintiff placed an order in San Francisco for the sale of the remaining 300 tons of manufactured steel which had not been furnished under his contract with the German mills.

On the last trial, the plaintiff having been debarred under the decision of the Appellate Term from recovering on his original theory, which I think was right, recovered on the theory that the defendant was liable for the difference between the contract price and the amount realized by plaintiff on the order placed in San Francisco since the commencement of this action, and that theory of damages is now to be approved as correct, in the main, with the exception merely that since, under plaintiff's contract with the defendant, the manufactured goods were to be delivered free on board vessel in Antwerp, the freight for transportation across the ocean and the duties at this port, which plaintiff would have been obliged to pay had he been permitted to fill his contract with the defendant, were saved to him under his contract to sell in San Francisco, and should therefore have been added to the amount realized on that contract in diminution of his damages.

The liability of the defendant was neither increased nor diminished by plaintiff's contract with the German mills, which was not made with a view to fulfilling his contract with the defendant. Nor did the defendant contract with the plaintiff with reference to the latter's foreign contract. The defendant, therefore, was neither entitled to any profits made by the plaintiff under his foreign contract nor liable for any damages sustained thereunder. The plaintiff was under no obligation to the defendant, after a breach by the latter, to dispose of the steel, which he had previous to contracting with defendant agreed to purchase in Germany, with a view to reducing the damages. The plaintiff, so far as the defendant is concerned, could have canceled his contract with the German mills. That he saw fit, instead of canceling the contract, to place the order elsewhere, is a matter which does not concern the defendant. I am of opinion, therefore, that the rule of damages applicable to the facts of this case entitles plaintiff to recover the difference between the price defendant agreed to pay and the reasonable cost of manufacture to fill the order, and that such damages are neither to be augmented by losses nor diminished by profits on disposing of the steel elsewhere.

For these reasons, therefore, I concur in a reversal of the judgment.

PATTERSON, P. J., concurs.