MEYER BROS. DRUG CO. v. McKINNEY et al.

(Supreme Court, Appellate Division, Third Department. March 9, 1910.)

1. FRAUDS, STATUTE OF (§ 83*)—SALE OF GOODS.

Strictly speaking, an agreement to manufacture and sell an article is not a contract of sale, but a contract to perform work, and does not come within the statute of frauds respecting the sale of goods over $50 in value.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 147; Dec. Dig. § 83.*]

**2. Sales (§ 418*)—Remedy of Buyer—Breach—Damages.**

Where one purchases property for the purpose of resale, and has, to the knowledge of the seller, a present contract for resale at a profit, on refusal to deliver he can recover the profit he would have made.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1190; Dec. Dig. § 418.*]

**3. Sales (§ 384*)—Contract—Breach—Damages.**

Where defendant gave plaintiff, a manufacturing chemist, an order for various kinds of perfumes, etc., to be put up in particular and specified packages and receptacles, with labels, etc., which plaintiff was obliged to have manufactured, the contract as a whole was in effect one to manufacture the various articles and deliver them in certain shape and condition, and for breach thereof by defendant plaintiff was entitled to recover the amount which it paid for receptacles and labels, less the value of such receptacles as could be used for other customers, and also the difference between the cost of producing the goods and the price defendant agreed to pay; that certain of the articles had a market value being immaterial.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1106; Dec. Dig. § 384.*]

Smith, P. J., dissenting.

Appeal from Trial Term, Broome County.

Action by the Meyer Bros. Drug Company against Edward P. McKinney and another. From the judgment, defendants appeal. Affirmed.

Argued before SMITH, P. J., and KELLOGG, COCHRAN, SEWELL, and HOUGHTON, JJ.

Theodore R. Tuthill, for appellants.

Israel T. Deyo, for respondent.

HOUGHTON, J. The plaintiff is a jobber and manufacturing chemist, and the defendants were engaged in the drug business. In March, 1906, the defendants gave to the plaintiff a written order for a large quantity of various kinds of perfumes, toilet waters, powders, and creams at specified prices per gross, to be delivered monthly for the period of two years. The various articles were to be put up in particular and specified packages and bottles, branded or labeled with defendants' name, all of which the plaintiff was to furnish packed ready for retail. The sachet powder, lavender, and Florida waters and tooth and talcum powders were to be made of a special grade and quality, especially for the defendants, and the perfumes and other articles were to be placed in receptacles for the retail trade from ordinary stock productions. Shortly after the defendants gave their order the plaintiff, at an expense of upwards of $2,000, purchased the necessary bottles, boxes, and labels therefor, selected and approved by the defendants, and the defendants ordered shipped to them a portion of the goods, and paid for the same. Thereafter they canceled their order and refused to accept any further goods, and the plaintiff, without further manufacturing or putting up the articles, brought this action to recover damages for such breach of contract. The trial court allowed the plaintiff the amount which it had paid for containers and

labels less the value of such containers as could be used for other customers, and also the difference between the cost to the plaintiff to produce the goods contracted for and the price which the defendants agreed to pay, which was found to be $2,590.44.

The principal question upon this appeal is whether the rule of damages adopted by the learned trial court in allowing to the plaintiff the profits which it would have made on its contract was correct, or whether the damage should be measured by the difference between the market value of the articles which the defendants agreed to buy and the price which they agreed to pay.

The counsel for the respondent concedes that in an ordinary contract to purchase an article which has a market value the damage which the seller may recover from the buyer who refuses to complete his contract must be measured by the difference between the market and the contract price; but he insists that the present contract was one to manufacture, and that, therefore, the defendants on breach of their contract must make the plaintiff whole by paying the profit which he would have made, which is the difference between what they agreed to pay and what it would have cost the plaintiff to fill their order.

The appellants urge that because some of the articles which the defendants agreed to purchase from the plaintiff were simply to be placed in receptacles by the plaintiff from ordinary stock productions either manufactured by the plaintiff or others in similar business, which articles had a staple market price, and because the articles which were to be specially manufactured for the defendants had some market value, that the damages which they should pay are not measured by the profits which the plaintiff would have made, but by the difference between the contract price and the market value. We are of the opinion that the contract must be deemed one to manufacture, and that the rule of damages adopted was correct. The plaintiff had facilities for and was engaged in the manufacture of all of the articles which the defendants agreed to buy. Some of them were to be specially manufactured according to the defendants' requirements of trade and as directed by them. That portion of the order which the defendants accepted and paid for was all manufactured by the plaintiff. It is true that a certain portion of the articles, notably the perfumes, were stock preparations which the plaintiff manufactured in large quantities, and from which orders of various customers were filled. What the plaintiff agreed to do, however, and what the defendants expected it would do, was to procure such containers with appropriate labels as the defendants might select, and to fill them with such various preparations as the plaintiff might manufacture generally or specially for the defendants. The contract, therefore, was that the plaintiff should furnish to the defendants the specified articles in certain form and in containers of certain design, and assemble the various preparations in such form as the defendants required for their retail trade. The plaintiff did not manufacture boxes and bottles, or print labels, and must procure them to be manufactured and printed. In effect, therefore, the defendants directed the plaintiff to procure to be manufactured such containers and labels. When the various articles which the defendants had ordered prepared were assembled and put up in the

various containers, they were then to be delivered to the defendants. The contract as a whole was in effect a contract to manufacture the various articles enumerated in defendants' order, and deliver them in certain shape and condition to the defendants.

If such be the correct interpretation of the contract, then it was immaterial whether certain of the articles had a market value, and the finding of the trial court that they had is not inconsistent with his general finding, for the plaintiff was entitled to the benefit of the bargain which the defendants had made, and its damage was the profit which it would have made if the defendants had permitted it to manufacture and assemble and had accepted and paid for the goods, instead of breaking their agreement so to do. Every rule of damage has for its object the making whole of the party against whom a breach of contract has been committed, and such rule must be deemed to have been contemplated by the parties when they entered into their contract. The defendants knew that the plaintiff was engaged in the business of manufacturing and supplying to the retail trade the articles which they agreed to purchase for the profit which could be made thereby, and that the order which they gave and the contract which they made was presumably of some value. Where property which has a market value is agreed to be sold, if the vendor can readily sell it in the market for as much or more than his purchaser agreed to pay, he has suffered no damage; and, where the vendee can purchase property which the seller refuses to deliver as cheaply in the market, he has suffered no loss. In most instances, therefore, the difference between the contract price and the market value is the measure of damage. Profits not speculative and uncertain can be allowed as damages for a breach of contract. Losses sustained and gains prevented are proper elements of damage. Wakeman v. Wheeler & Wilson Mfg. Co., 101 N. Y. 205, 209, 4 N. E. 264, 54 Am. Rep. 676. For example, where one purchases property for the purpose of resale and has to the knowledge of the seller a present contract for resale at a profit, on refusal to deliver, he can recover the profit which he would have made. Messmore v. N. Y. Short & Lead Co., 40 N. Y. 422; Booth v. Spuyten Duyvil Rolling Mill Co., 60 N. Y. 487, 492. Strictly speaking, an agreement to manufacture and sell an article is not a contract of sale at all. It is a contract to perform work, and does not come within the statute of frauds respecting the sale of goods over $50 in value. Parsons v. Loucks, 48 N. Y. 17, 8 Am. Rep. 517; W. C. & M. Co. v. Holbrook, 118 N. Y. 586, 23 N. E. 908, 16 Am. St. Rep. 788. Where, therefore, a contract is made to manufacture and deliver goods at a certain price, and the purchaser breaches his contract before the goods are manufactured, the only means of ascertaining the loss which the manufacturer and seller sustains is to ascertain what it would have cost him to have fulfilled his contract and deduct that from what the purchaser agreed to pay, and in that way, and in that way only, can he be reimbursed for his loss. He is not obliged after breach to manufacture and place his goods upon the market with attendant risk and expense of selling, and then charge his purchaser with the difference between what he gets and what the purchaser agreed to pay. The purchaser having refused to perform before the goods are manufactured, the manufacturer is not bound to

continue performance, but can stop where he finds himself at the breach, and recover the profit which he would have made. Todd v. Gamble, 148 N. Y. 382, 42 N. E. 982, 52 L. R. A. 225; McMaster v. State of New York, 108 N. Y. 542, 556, 15 N. E. 417; Masterton v. Mayor, etc., of Brooklyn, 7 Hill, 61, 42 Am. Dec. 38; Lehmaier v. Standard Specialty & Tube Co., 123 App. Div. 431, 108 N. Y. Supp. 402; Isaacs v. Terry & Tench Co., 125 App. Div. 532, 109 N. Y. Supp. 792; Hinckley v. Pittsburgh Bessemer Steel Co., 121 U. S. 264, 7 Sup. Ct. 875, 30 L. Ed. 967. The contract between the parties in our view being one to manufacture and sell and deliver, the rule of damage adopted by the learned trial court was correct.

The appellants further contend that greater credit should have been given them on certain of the boxes which plaintiff had purchased. The testimony shows that it would require much time and labor to make these receptacles fit for use for other customers, and it was problematical whether many of them could be used at all.

Under the proofs, we do not feel that we should interfere with the findings of the trial court in this respect, and the judgment must be affirmed, with costs. All concur, KELLOGG, J., in memorandum, except SMITH, P. J., who dissents.

JOHN M. KELLOGG, J. (concurring in result). The various articles were by the contract to be furnished in specially prepared and labeled boxes, bottles, jars, and containers, and it is conceded that in the form in which they were to be delivered they had no market value. The plaintiff evidently expected to and would have realized a good profit by fulfilling the contract, and the defendant by breaking it has deprived the plaintiff of that profit. It is unknown whether the plaintiff's profits would have come entirely from buying or preparing the liquids, powders, and other things, or from supplying the retainers, labeling them, and preparing the goods for the market under the contract. It is manifestly unjust in computing the plaintiff's damages to say that he was required to furnish the containers and labels at actual cost, and that, as the liquids and powders had a fixed market value, the plaintiff has therefore suffered no injury.

In order to apply a rule of damages which will let the defendant out and enable it to violate its contract with impunity, the court is not required or permitted to compute the plaintiff's damages on any other basis than a consideration of the things in the form in which they were to be delivered. If in that form they had a market value, and the defendant agreed to pay the full market value, the plaintiff has sustained no substantial loss. If, however, the goods when prepared for delivery had no market value, then the plaintiff's damages may be established by computation of the loss of profits. It is immaterial, therefore, from what source the plaintiff expected or would have made its profits under this contract. Both parties must rest where they put themselves in contracting for the delivery of things which had no substantial market value in the condition in which they were to be prepared for delivery. It results that the loss of profits furnish the proper measure of damages.