[628 NYS2d 56]

TERMINAL CENTRAL, INC., Appellant-Respondent, v HENRY MODELL & COMPANY, INC., Respondent-Appellant.

First Department, June 6, 1995

## APPEARANCES OF COUNSEL

*Gary M. Rosenberg* of counsel, New York City *(Warren A. Estis, Sherrie A. Taylor* and *Edward W. Quinn* on the brief; *Rosenberg & Estis, P. C.,* attorneys), for appellant-respondent.

*Jeffrey R. Metz* of counsel, New York City *(Lucas A. Ferrara* on the brief; *Finkelstein, Borah, Schwartz, Altschuler & Goldstein, P. C.,* attorneys), for respondent-appellant.

## OPINION OF THE COURT

SULLIVAN, J.

By agreement dated May 17, 1979, plaintiff Terminal Central, Inc. (TCI) leased from Regency-Lexington Partners commercial space, i.e., a portion of the ground floor and basement within the Grand Hyatt Hotel located at 109 East 42nd Street in the Borough of Manhattan. In early 1986, Henry Modell & Company, Inc., another commercial tenant in the building, required more space and entered into negotiations with the landlord Regency. At the same time, Modell and TCI entered into an agreement, dated April 25, 1986, whereby TCI, in consideration of $1,725,000 payable by Modell to it in 180 monthly "Assignment Payments" over a 15-year period, assigned its lease to Modell "so as to enable Modell to effect a cancellation thereof and to immediately thereafter enter into a new lease [the Modell Lease] covering a portion of the [p]remises as well as certain other space in the said building." In order to consummate the assignment and induce the landlord to enter into a new lease with Modell the agreement was modified by an April 29, 1986 letter agreement which provided that out of the sum due TCI each month $416.67 be paid directly to Donald J. Trump. The April 25, 1986 agreement did not contain a clause accelerating the monthly assignment payments in the event of Modell's default.

In order "to protect and secure TCI with respect to any default by Modell concerning the [a]ssignment [p]ayments", the April 25 agreement provided that Modell was to assign the Modell Lease to it, the assignment to be held in escrow. In the event of a final judicial determination of a default with respect to the monthly payments due TCI, the escrow agents were to deliver the assignment of the Modell Lease to TCI. If all the monthly payments were made, the assignment was to be delivered to Modell. The agreement also specifically provided that in the event of a default by Modell "TCI may take possession of the demised premises" under the Modell Lease. The agreement further provided that if TCI expended any sums to cure Modell's default under the Modell Lease, Modell was to repay said sums to TCI with its next monthly assignment payment installment.

As this record shows, on April 29, 1986, TCI, with the landlord's approval, assigned its lease to Modell, which simultaneously surrendered the TCI lease and entered into the Modell Lease. Modell then incorporated TCI's space, now part of the demised premises under the Modell Lease, and made it part of its new, larger store premises.

It is undisputed that Modell is in default, having failed to pay the November 1, 1993 monthly assignment payment in the sum of $9,333.33. After proper notice of default, Modell failed to pay subsequent monthly payments due through and including February 1, 1994. This action, alleging breach of the April 25, 1986 agreement and seeking, in a first cause of action, $37,333.32 by virtue of Modell's failure to pay the four monthly installments due on November 1 and December 1, 1993, January 1 and February 1, 1994, and seeking, in a second cause of action, $885,499.71, by virtue of the anticipatory breach of the entire agreement, was commenced in February 1994. Modell subsequently defaulted in the payment of the March 1, April 1 and May 1, 1994 monthly payments.

After joinder of issue, TCI moved for summary judgment on both causes of action. Modell cross-moved to dismiss the complaint or for summary judgment dismissing the same or, alternatively, for leave to file an amended answer. Modell's motion to dismiss was based on its alleged surrender of the demised space to the landlord as a result of the landlord's purported breach of the covenant of quiet enjoyment. Specifically, Modell claimed that its occupancy of the demised premises was plagued from the onset by a " 'dirt migration

problem' ", that is, a " 'film-like dust' ", with a high iron content, which seeped through a faultily constructed premises wall abutting an adjoining subway station and tracks. Modell feared that prolonged exposure to this " 'steel dust' " would adversely affect the health and well-being of its customers and employees. In view of the "actual and/or constructive eviction", Modell argued, it was relieved of its obligation under the April 25, 1986 agreement to make the monthly assignment payments to TCI. In moving to amend its answer, Modell sought to interpose counterclaims alleging actual and constructive eviction, breach of the covenant of quiet enjoyment, lost profits, breach of contract, negligence and seeking, *inter alia,* damages, rescission and reformation. Additionally, Modell sought to commence a third-party action against the landlord.

The IAS Court denied TCI's motion for summary judgment as well as Modell's motion to dismiss the complaint but granted Modell leave to amend its answer, holding, with respect to TCI's motion, that an issue of fact was presented "as to whether [its] remedy for [Modell's] default in assignment payments was limited to assignment of [Modell's] lease, to [TCI]." To the extent that the IAS Court identified a factual issue, i.e., whether the remedies available as a result of Modell's default in making its monthly assignment payments were limited to an assignment of the Modell Lease to TCI, it implicitly found a default on Modell's part. In the next breath, however, the court allowed the interposition of counterclaims, which, if meritorious, would provide a defense to plaintiff's assignment payment claims since Modell alleges that its eviction extinguished the obligation to make such payments. In any event, the remedy issue is not one of fact at all but of law, which the IAS Court should have resolved. We find TCI's remedies are not so limited and that Modell has failed to proffer any defenses to its claims under the first cause of action, as to which TCI's appeal, by its brief, is limited. Moreover, since the counterclaims sought to be interposed against TCI and the third-party complaint against the landlord all relate to claims which are irrelevant to this action, leave to amend the answer should have been denied. Nor is there any merit to Modell's claim of a lack of proper notice of default, also raised on its cross appeal. The requisite notice was given by notice dated November 22, 1993 and, in light of Modell's legal position, no further notice was required.

On this record, it is undisputed that TCI fully performed its

obligations under the April 25, 1986 agreement. Pursuant to the agreement, TCI assigned its lease to Modell. It is also not disputed that, simultaneously with that assignment, Modell surrendered TCI's lease to the landlord effecting a cancellation thereof and entered into a new lease, the Modell Lease, with the landlord. Finally, it is undisputed that Modell has failed to make any payments since November 1, 1993 and is therefore, absent a defense to the nonpayment, in default under the terms of the April 25, 1986 agreement.

Modell's only discernible defense is that the monthly assignment payments were conditioned upon its use and occupancy of the Modell Lease premises and that its actual or constructive eviction therefrom excuses its obligation to make those payments. Whether Modell has been evicted, constructively or otherwise, from the demised premises is irrelevant to Modell's obligations under the April 25, 1986 agreement, which constitutes a $1,725,000—payable over 15 years—sale of a leasehold, not a sublease. Upon the April 29, 1986 execution of the assignment of the lease, which was simultaneously surrendered and a new lease executed incorporating the former TCI space into it, TCI had no further obligations with respect to the premises. There was never any landlord/tenant relationship between TCI and Modell and the April 25, 1986 agreement contains no representations or promises as to the condition of the premises.

Thus, the rights and obligations of Modell and the landlord under the Modell Lease have no bearing on the April 25, 1986 agreement between TCI and Modell. In fact, the Modell Lease contains the following provision with respect to the TCI lease. "The parties hereto agree that, effective upon the date hereof, the term of the TC[I] Lease shall be deemed to have terminated and expired with such force and effect as if such date were originally set forth in the TC[I] Lease as the expiration date of the term thereof."

Since the landlord's compliance with its obligations under the Modell Lease is irrelevant to Modell's obligations under the April 25, 1986 agreement with TCI, there is no basis for the assertion of counterclaims against TCI based on the provisions of the Modell Lease. The claims asserted in those proposed counterclaims afford no defense to TCI's assignment payments claims. When a proposed amendment to a pleading is devoid of merit, leave to amend should be denied so as to avoid needless, time-consuming litigation. *(Brown v Samalin & Bock,* 155 AD2d 407.) Any claims Modell might have against

the landlord under the Modell Lease, which are the subject of its third-party action, are irrelevant to this action and can be asserted in a separate action against the landlord. Thus, it was error to permit amendment of the answer and the interposition of a third-party action.

The only issue remaining is whether TCI is entitled to summary judgment for $65,333.31, the total of the monthly assignment payments due and as to which Modell is in default. Absent a special provision of law or contractual limitation *(see, e.g., Weld v Postal Tel.-Cable Co.,* 199 NY 88), it is a basic tenet of the law of damages that where there has been a violation of a contractual obligation the injured party is entitled to fair and just compensation commensurate with his loss. *(Swain v Schieffelin,* 134 NY 471; *Meyer Bros. Drug Co. v McKinney,* 137 App Div 541, *affd* 203 NY 533.) The April 25, 1986 agreement is devoid of any limitation on TCI's right to the monthly installment payments in the event of Modell's default in making those payments. While Exhibit "A" to the agreement, referred to in paragraph 3, required Modell to include a provision in the Modell Lease which specifically provides that if Modell "shall fail to pay [the monthly installment payments] to TCI, TCI may take possession of the demised premises pursuant to a written assignment of [the Modell Lease]", that remedy, as is clear from the provision's plain language, is optional. Moreover, paragraph 3 (b) of the agreement obligates Modell, irrespective of whether TCI exercises the option to take possession of the demised premises, to "[r]epay to TCI together with its next monthly installment of Assignment Payments any and all sums expended by TCI (which sums shall be deemed to be Assignment Payments for all purposes) in curing any defaults by Modell under the [Modell] Lease." Thus, the agreement gave TCI the right, on Modell's default, to take possession of the demised premises and at the same time obligated Modell to continue to make its monthly assignment payments. It should be noted that TCI has not taken, or sought, delivery of the lease assignment. Thus, even if its rights in that regard were noncumulative, TCI has not made such an election of remedies.

Nor does the April 25, 1986 agreement contain any other language which could be construed to limit TCI's remedies in the event of Modell's breach of its obligations to make the monthly installment payments. Limitations on a party's liability will not be implied and to be enforceable must be clearly, explicitly and unambiguously expressed in a contract. *(See,*

*Boll v Sharp & Dohme,* 281 App Div 568, 570, *affd* 307 NY 646; *Johnston v Fargo,* 98 App Div 436, 442, *affd* 184 NY 379.) Such clauses are, in any event, strictly construed against the party seeking to avoid liability. *(See, Shalman v Board of Educ.,* 31 AD2d 338, 342.)

The language of both the April 25, 1986 agreement and its annexed Exhibit "A" is unequivocal in its failure to limit TCI's remedy for Modell's breach of the agreement to an assignment of the Modell Lease. In accordance with the terms of the agreement TCI is entitled to $65,333.31, which represents seven monthly payments less the $416.67 due Donald Trump, through May 1994.

We have considered the other issues raised in opposition to TCI's motion for summary judgment and find them to be without merit.

Accordingly, the order of the Supreme Court, New York County (William J. Davis, J.), entered September 14, 1994, which, as limited by the briefs, denied plaintiff's motion for summary judgment on the first cause of action, denied defendant's cross motion to dismiss the complaint and granted it leave to serve an amended answer, should be modified, on the law, the motion for summary judgment on the first cause of action granted in the sum of $65,333.31 and the cross motion denied in its entirety and, except as thus modified, affirmed, with costs and disbursements to plaintiff.

MURPHY, P. J., RUBIN, KUPFERMAN and Ross, JJ., concur.

Order, Supreme Court, New York County, entered September 14, 1994, which denied plaintiff's motion for summary judgment on the first cause of action, denied defendant's cross motion to dismiss the complaint and granted it leave to serve an amended answer, modified, on the law, the motion for summary judgment on the first cause of action granted in the sum of $65,333.31 and the cross motion denied in its entirety and, except as thus modified, affirmed, with costs and disbursements to plaintiff.