ALBERT U. TODD et al., Composing the Firm of FEUCHTWANGER & COMPANY, Respondents, v. JAMES GAMBLE et al., Composing the Firm of PROCTER & GAMBLE, Appellants.

1. CONTRACT OF SALE — BREACH BY VENDEE — MEASURE OF DAMAGES. The general rule, fixing as the measure of damages, for a breach of a contract of sale by the vendee, the difference between the contract price and the market value, has no application to a breach of a contract for the manufacture and sale of a commodity, unless it appears that, upon the breach by the vendee, the vendor could have placed the commodity upon the market and thus have relieved himself from the consequence of the vendee's default.

2. MEASURE OF DAMAGES, IN ABSENCE OF MARKET VALUE. When the subject of a contract of sale at a fixed price is an article to be manufactured by the vendor, perishable in its nature when kept for any length of time (such as e. g., silicate of soda), having but a limited demand and no real market, and only manufactured in quantities upon orders by consumers, the mere fact that at the time of a breach of the contract by the vendee's refusal to accept delivery there was a price at which the vendor had been able to effect sales of the article, is not controlling in fixing the measure of damages ; but the vendor will be entitled to recover the difference between what it would cost him to manufacture and deliver the article under the contract and the contract price.

Reported below, 74 Hun, 569.

(Argued January 13, 1896 ; decided February 18, 1896.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made December 15, 1893, which affirmed a judgment in favor of plaintiffs entered upon a verdict, and also affirmed an order denying a motion for a new trial.

This action was brought to recover damages for the defend

ants' failure to receive and pay· for certain silicate of soda under an executory contract of sale.

The facts, so far as material, are stated in the opinion.

*Charles E. Hughes* for appellants. The measure of damages is the difference between the contract price and the value of the commodity at the time of breach. (*Dillon* v. *Anderson*, 43 N. Y. 231; *Clark* v. *Marsiglia*, 1 Den. 317; *Hamilton* v. *McPherson*, 28 N. Y. 72; *Parsons* v. *Sutton*, 66 N. Y. 92; *Johnson* v. *Meeker*, 96 N. Y. 93; *Wright* v. *Bank of the Metropolis*, 110 N. Y. 237; *Parmenter* v. *Fitzpatrick*, 135 N. Y. 190; Abb. Tr. Ev. 308; 2 Sedg. on Dam. [7th ed.] 367; *Baker* v. *Drake*, 53 N. Y. 211; *Dana* v. *Fiedler*, 12 N. Y. 40; *Barnes* v. *Brown*, 130 N. Y. 372; *Windmuller* v. *Pope*, 107 N. Y. 674; *Dolph* v. *T. L. M. Co.*, 28 Fed. Rep. 553; *Murray* v. *Stanton*, 99 Mass. 345; *Borrius* v. *Hutchinson*, 18 C. B. [N. S.] 445; *France* v. *Gaudet*, L. R. [6 Q. B.] 204; *Hinds* v. *Liddell*, L. R. [10 Q. B.] 265; *H. & H. Co.* v. *C. B. Co.*, 62 Fed. Rep. 897; Mayne on Damages [5th ed.], 18, 181, 275; *O'Hanlon* v. *G. W. R. Co.*, 6 B. & S. 483; *Den Bluyker* v. *Guston*, 97 Mich. 354; *Gunn* v. *Burghart*, 15 J. & S. 371; *Jones* v. *Morgan*, 90 N. Y. 4; *S. & D. C. & I. Co.*, v. *J. S. C. Co.*, 35 L. T. [N. S.] 668; *Masterton* v. *Mayor, etc.*, 7 Hill, 61; *Danolds* v. *State*, 89 N. Y. 36; *McMaster* v. *State*, 108 N. Y. 542; *N. Y. & H. R. R. Co.* v. *Story*, 6 Barb. 419; 6 N. Y. 85.)

*Benjamin F. Tracy* for respondents. The appellants cannot complain of the rule adopted by the court for estimating the plaintiffs' damages. The submission by the court to the jury of the question whether there was or was not a market value for the silicate of soda at the time of the breach of the contract and the finding of the jury that there was no such market value take from the appellants all ground of complaint. (*Masterton* v. *Mayor, etc.*, 7 Hill, 61; *Dillon* v. *Anderson*, 43 N. Y. 231; *S. & D. C. & I. Co.* v. *J. S. C. Co.*, 35 L. T. [N. S.] 668.)

Gray, J. This appeal presents the question of the proper measure of damages, in an action against the defendants for refusing to perform their contract with the plaintiffs. By that contract the plaintiffs, who were manufacturers of chemicals, were to furnish the defendants with " whatever quantities of silicate of soda they will require to use in their factories during one year from date," at the price of $1.10 per hundred pounds, in New York. Under this agreement the plaintiffs had delivered, and the defendants had paid for, 350 barrels of the article, when the latter notified the former that they would not receive any more. The refusal on the part of the defendants to perform their contract seems to have been purely arbitrary. Upon receiving this notice from the defendants, the plaintiffs ceased to manufacture under the contract, and I believe that the defendants have not contended that it was the duty of the plaintiffs to do otherwise. It was conceded that, for the balance of the contract year, the defendants used about 2,877 barrels of silicate of soda, (each barrel containing about 550 pounds), which they purchased from other parties, and under instructions from the court, that the plaintiffs, if there was no market value for the article, were entitled to recover the difference between the cost of production and the contract price, the jury rendered a verdict for the plaintiffs against the defendants, for their failure to take that amount, for damages measured by that rule. They, also, upon the request of the court, made a special finding that, at the time of the breach by the defendants of their contract, there was no market value for silicate of soda.

The general rule for the measure of damages, in the case of a breach by a vendee in the contract for the sale of an article of merchandise at a fixed price, is the difference between the contract price and the market value of the article, on the day and at the place of delivery. (*Gregory* v. *McDowell*, 8 Wend. 435; *Dey* v. *Dox*, 9 Wend. 129; *Windmuller* v. *Pope*, 107 N. Y. 674; Wood's Mayne on Damages, § 200.) That is the rule which has been recognized both in England and here. The principle upon which it rests is that of an

indemnification of the injured party for the injury which he has sustained and, in ordinary cases, the value in the market on the day forms the readiest and most direct method of ascertaining the measure of this indemnity. If the article is bought and sold in the market, the market price shows what pecuniary sum it would take to put the plaintiff in as good a position as if the contract had been performed. (Sedgwick on Damages, §§ 243, 244.) In *Murray* v. *Stanton* (99 Mass. 345), it was said in the opinion : " When there is a market value it shows the price at which either party may have relief from the consequences of the default of the other and, therefore, it properly measures his damages. But when there is no such standard, the damages must be estimated from other means of valuation." To justify a departure from this general rule, the facts must take the case out of the ordinary and, if there is no such standard as a market value, the measure of the plaintiff's damage may be arrived at, in a case like the present one, by ascertaining the difference between the contract price and the cost of production and delivery. Market value, in the ordinary sense, is generally, but not always, the measure of damages and the application of the rule necessarily must be to a case where it is shown that there is a market value for the subject of the contract of sale.

In this case it appears that when the contract was made, the plaintiffs and another concern manufactured, substantially, all the silicate of soda made in the United States. After the making of the contract a new concern was started, which, as we are allowed to infer from the evidence, occasioned the refusal by the defendants to continue ordering any longer from the plaintiffs. The principal use of silicate of soda is in the manufacture of laundry soaps, in which business the defendants were largely engaged and consumed, during the year in question, over sixty barrels a week, or something over one-tenth of the entire production of the country. It seems that the article is highly perishable in its nature and can only be fairly well kept for any reasonable time by being barrelled up. Consequently, but little of it is kept in stock by manu-

facturers, who deal directly with the consumers and produce it as they require it. Merchants do not usually keep it in stock; though, upon the question of its having a market, the defendants adduced some evidence by a dealer in chemicals to show that he bought the article from manufacturers and sold it to consumers. But his aggregate sales in the year in question he estimated to be only from one hundred to one hundred and fifty barrels, and he seldom kept over fifteen barrels on hand. Of course, this was quite insufficient evidence to warrant a finding by the jury as to there being a general market for the article, upon which it could be disposed of in such large quantities. The contract, if carried out, would have called for a production at the rate of sixty barrels a week, and the evidence does not warrant the belief that any such quantity could have found a ready market and, if not, then the article would soon have become unfit for use. It is very clear, upon the evidence, if the plaintiffs had continued manufacturing, after the refusal by the defendants to be bound by the contract, that it would not have been for the advantage of the latter, with respect to diminishing the damages. It appeared from the evidence that the capacity of the plaintiffs' factories was from 200 to 300 barrels a week, or about 100 barrels in excess of their sales, and, therefore, the plaintiffs were shown to have been in a position to have furnished the defendants with the quantities which they subsequently took from other parties. The contract price had been fixed at a concession upon the plaintiffs' selling price of the article, and as to such sales as were made of the article upon orders, during the balance of the contract year, the price did not vary materially. If the contention of the defendants should prevail and the measure of damages should be held to be the difference between the contract price and the value of the commodity at the time of the breach, as fixed by the price received at some known sales, the plaintiffs would have been entitled to recover nothing, or only nominal damages, of the defendants.

The defendants proceed upon the assumption that if an

article is shown to have a value, or selling price, the measure of damages must be the difference between it and the contract price; irrespective of the question of the nature of the market for it. To use their language, "if there be no market, in a restricted sense, yet if the commodity is the subject of sale and there is a selling price, the same rule obtains and proof of cost should be excluded." Proceeding upon that assumption, they argue, substantially, that as there was shown to be a selling price, from the fact of there having been sales of the article by the plaintiffs, it is a controlling factor and compels the application of the general rule for which they contend. To that proposition I think we should not assent and I fail to find adequate support for it either in principle, or in the authorities. The general rule, certainly, can have no application to the case of a breach of a contract for the manufacture and sale of a commodity; unless it is made to appear that, upon the breach by the vendee, the vendor could have placed the commodity upon the market and, by thus disposing of it, have relieved himself from the consequences of the defendants' default. The principle of indemnity upon which the rule rests would be satisfied in such a case and the vendor would be confined for his recovery to the difference between a known market value at the time of the breach of the contract and the price fixed by the contract. In *Hadley* v. *Baxendale* (9 Exch. 341) this rule was laid down by Baron ALDERSON: " Where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive, in respect of such breach of contract, should be such as may fairly and reasonably be considered either arising naturally, *i. e.*, according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it."

What must the parties be deemed to have contemplated in the present case? The defendants bound the plaintiffs, through this contract, to supply all the silicate of soda which

they would require for the year. The plaintiffs, with ample capacity for supplying the article, contemplated that their production would be increased by the amount which the defendants would take from them during the year. The defendants agreed to take the article only from the plaintiffs and were accorded a concession upon the price at which the plaintiffs were then selling their product. The plaintiffs were assured of sales which, with their facilities for manufacturing, would represent to them a profit measured by the difference between the cost of its production and the price which they had fixed in the contract. The defendants well knew, from the perishable nature of the article and its limited demand, that the plaintiffs would manufacture to meet their requirements in their business and that such an article would not be manufactured in such large quantities as would be needed by them, unless it could be disposed of at once. Of course, they must have contemplated a profit to the plaintiffs if they could manufacture at a cost under the contract price. It is absurd to say, in view of the evidence, that there was a market value, in the ordinary sense of the term, for silicate of soda and, perhaps, the defendants do not seriously argue that there was. But if we are to hold, in accordance with their views, because there was a price at which the plaintiffs had been able to effect sales of the article at the time of the breach, that that fact must be controlling in fixing the measure of damages, we should be doing a great injustice and we should be establishing a commercial rule, which would work injuriously in cases where, like the present one, the subject of sale between the parties is an article perishable in its nature, when kept for any length of time ; having but a limited demand and no real market, and only manufactured in any quantities upon orders by consumers. In *Parsons* v. *Sutton* (66 N. Y. 92), upon the question of a vendee's claim for damages for breach of a contract for the sale and delivery of paper, Judge Earl, in stating the ordinary rule of damages, added : " When the buyer can go into the market and buy the article which the seller has

failed to deliver, this is the only rule, as it offers the buyer full indemnity. Special damages are allowed when this rule will not furnish full indemnity." He instances, "if there is no market for the article." The converse of the proposition should be true where the seller suffers from the breach by the buyer.

Much reliance is placed by the defendants upon *Dolph* v. *Troy Laundry Machinery Co.* (28 Fed. Rep. 553). In that case the parties were competitors in the business of manufacturing and selling washing machines and, to obviate the consequences to each other of competition, a contract was made between them to divide the profits on sales, upon the basis of a fixed manufacturer's price for a term of years. Under the contract, the plaintiff was obliged to deliver a certain number of his machines at a certain price each year, as the defendant should order from time to time; or the plaintiff was to have the option of manufacturing all machines sold by both parties. After a year the defendant terminated the contract by notice and the plaintiff sued for damages measured by the difference between the cost and the contract price. As I read the opinion of Judge Wallace, it assumes that there was a market for the sales of such articles and he held that the measure of damages was the difference between what the plaintiff would have been entitled to, if he had built all the machines during the term of the contract, viz.: their market value, and the contract price. His citation of *Elbinger* v. *Armstrong* (L. R. [9 Q. B.] 473), seems to show his understanding of the exception to the general rule. It was there said by Justice Blackburn : " Where, from the nature of the article, there is no market in which it can be obtained, this rule," (the general rule), "is not applicable." However appropriate the application of the general rule may have been to that case, I do not consider it as an authority for its application upon the facts of the present case. The leading case in this state of *Masterton* v. *The Mayor*, (7 Hill, 61), illustrates an application of the rule, that the difference between the cost and the contract price will be allowed, if there is no market value for the article. In that case the plaintiff had contracted

with the city of Brooklyn to furnish certain marble for the city hall and Nelson, Ch. J., observed in his opinion: "If there was a market value of the article in this case, the question would be a simple one. As there is none, however, the parties will be obliged to go into an inquiry as to the actual cost of furnishing the article at the place of delivery." At another place he says: "When the article has no market value, an investigation into the constituent elements of the cost to the party who has contracted to furnish it, becomes necessary; and that, compared with the contract price, will afford the measure of damages." Applying the principle of that decision to the present case, we have ample authority for saying that as silicate of soda was an article which had no market value, in the ordinary sense, but was usually manufactured upon orders given by consumers, the manufacturer, whose contract to furnish it is broken by the refusal of the vendee to take it, is entitled to recover as his damages the profits, which the performance of the contract by the vendee would have produced to him; or the difference between what it would cost him to manufacture and deliver it under the contract and the price agreed therein to be paid by the vendee. A comparatively recent case in England is much in point. In the case of *The Silkstone & Dodsworth Coal & Iron Co.* v. *The Joint Stock Coal Co.* (35 L. T. [N. S.] 668, decided in the Exchequer Division), the plaintiff company, colliery owners, contracted to supply, and the defendant company, dealers in coal in London, contracted to purchase, 3,250 tons of old Silkstone coal, at 19s. a ton; to be delivered to and taken by the defendant at the pit's mouth in equal monthly quantities, extending over a period of nine months. During several of the months the defendant failed to send wagons forward to accept the full quantity they were bound to accept, and which the plaintiff was ready and willing to supply in such months, and the defendant therein made default. The coal of the plaintiff's colliery was of a perishable nature deteriorating rapidly in quality, if stacked or stored above ground, and it was not the ordinary

course of business for the colliery owner to raise such coal, except to supply contracts previously entered into. It was raised, as far as possible, from day to day to supply the wagons arriving to receive it, into which it was delivered directly from the pit's mouth. The coal already raised, but not taken by purchasers, could be, and frequently was, sold in small quantities in the London Coal Exchange. In an action brought by the plaintiff to recover damages from the defendant, for a breach of the contract, in failing to take the full monthly quantity, it was held that the amount of damages the plaintiff was entitled to recover was the difference between the cost of raising the coal, added to the value of the coal itself remaining unraised in the mine, and the contract price. In that case the contention of the defendants was that the proper measure of damage was the difference between the price at which the coals could have been sold as raised coal and the contract price. It was said by KELLY, C. B.: " It appears most clearly from the case that, if the plaintiff had raised the coal, and brought it to the pit's mouth and endeavored to sell it, the result of such proceeding would have been the deterioration of the coal from day to day until a purchaser could have been found for it; and that even if one had been found, it would have been very uncertain whether the price that would have been obtained would have been equal to that which the defendants had contracted to pay     *     *     *     Under these circumstances it appears to me to be that we have only to consider what is the amount of the profit that the plaintiffs would have gained by the defendants performing their contract. They would undoubtedly have gained the difference between the amount of their expenditure in raising the coal, added to the value of the coal itself, had it remained unraised and unsold in the mine, and the contract price of 19s. per ton, which they would have received for the coal had the contract been duly performed, and that difference is the sum which the plaintiffs are entitled to recover."

That case seems to have been well considered and is quite similar, in its facts, to the present one. I think we should con-

clude that there was no error in the instruction given by the trial judge· to· the jury and this conclusion makes it unnecessary for us to consider any of the other exceptions in the case.

The judgment appealed from should be affirmed, with costs.

All cóncur.

Judgment affirmed. _____