## FISHER HYDRAULIC STONE & MACHINERY CO. v. WARNER.

(Circuit Court, N. D. New York.    June 22, 1911.)

**1. SALES (§ 153*)—CONTRACT TO PURCHASE—BREACH—TENDER BY SELLER.**

Where a contract for the sale of certain patented machinery and fittings provided that defendant should order shipment before October 1, 1908, and that plaintiff should thereupon deliver the machinery, and defendant should have an opportunity for inspection, defendant's failure and refusal to order shipment within the time prescribed constituted a breach of contract and entitled plaintiff to sue therefor without shipping the machinery to destination and tendering inspection and delivery there.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 363; Dec. Dig. § 153.*]

**2. SALES (§ 384*)—BREACH OF CONTRACT—MEASURE OF DAMAGES.**

Plaintiff contracted to sell defendant certain patented machinery with a license to operate the same under the patent within a specified territory. Defendant agreed, but failed and refused to order shipment of the machinery within the time prescribed. The contract provided that plaintiff should retain title to the machinery until paid for, and the machinery was such that it had only a limited market value. *Held,* that the measure of plaintiff's damages was the difference between the cost of manufacturing the machinery and its actual value at the time and place of delivery, and, in the absence of proof of either, plaintiff was only entitled to recover nominal damages.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1098-1107; Dec. Dig. § 384.*]

At Law.    Action by the Fisher Hydraulic Stone & Machinery Company against Henry P. Warner on written contract to recover damages for breach of a contract to purchase certain concrete machinery and fittings at the price of $5,630, less $500, paid on the execution of the contract.    Findings and judgment for plaintiff for nominal damages.

Costello, Burden, Cooney & Walters, for plaintiff.
King, Waters & Page, for defendant.

RAY, District Judge.    On the 16th day of March, 1908, the plaintiff, as party of the first part, a corporation organized and doing business under the laws of the state of Maryland, by W. H. Fisher, its president, entered into a written contract with the defendant, Henry P. Warner, party of the second part, of Syracuse. N. Y., whereby it was agreed as follows:

The plaintiff agreed:

(1) To sell to the defendant the concrete machinery and fittings described in Schedule A annexed to such contract for the sum of $5,630; same "to be sold f. o. b. cars Mt. Gilead, Ohio."    Later we find this language:

"Said machinery and fittings is sold for the sum of $5,630, and upon the following terms."

(2) Said machinery and fittings were to be put up and installed under the supervision of the party of the first part or its representative, without charge, except for hotel bill of superintendent at the city of Syracuse, N. Y.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

(3) It was mutually agreed by the parties:

"That the machinery and appliances herein mentioned and referred to (in the contract) shall be ordered by the party of the second part on or before October first, 1908, and the party of the first part will make shipment of said machinery within thirty days from and after receipt of said order."

Payment was to be made as follows:

(1) A payment of $500 on the execution of the agreement. This payment was made.

(2) Fifty per cent. of the balance on the receipt of a bill of lading for the completed outfit of machinery and fittings mentioned in said Schedule A "upon the arrival of such outfit in the city of Syracuse, N. Y.," provided that second party was to have the privilege of examining the same on arrival in Syracuse to see if all the articles had been shipped.

(3) The balance of the purchase price was to be paid in 90 days after the receipt of such machinery, etc., in Syracuse.

While the defendant paid the $500 on the execution of the agreement as provided, he never ordered the machinery or fittings, or any part of same, ignoring all communication by letter on the subject, and the plaintiff did not put the machinery or fittings, or any part of same, on the cars at Mt. Gilead, Ohio, or at any other place, or ship or deliver same to or at Syracuse, N. Y.

The plaintiff, under objection, was allowed to show and, I think, did show, that it caused to be made and had ready for shipment on or before October 1, 1908, the machinery, etc., in question at Mt. Gilead, Ohio, and still has same in store. It appeared that the machinery and fixtures were not made at the time the contract was entered into, but were made and completed as early as September of that year. This was not an agreement to manufacture the machinery and fittings for the defendant and deliver same to him, but an executory contract to sell and to deliver on an order being received; the defendant agreeing to order by a certain date, and the plaintiff agreeing to ship or deliver within 30 days thereafter.

The defendant, in his answer, says:

"Fifth. Defendant in further answering alleges that the plaintiff in this action has never shipped the machinery, which is the subject-matter of said contract, to this defendant, and that said plaintiff has never sent to this defendant any bill of lading for such machinery, and that such machinery has never arrived in the city of Syracuse, N. Y., and that this defendant has never had the opportunity of examining such machinery and of determining that the whole of the articles contracted for have been delivered in Syracuse, N. Y., and that said plaintiff has never installed the said machinery, never set up the same, and that said machinery has never been in successful operation for any time; and that by reason of all the facts last hereinbefore set forth this defendant has never become liable to pay to the said plaintiff any sum whatever under and by virtue of the said contract referred to in said complaint or otherwise, except said sum of $500 already paid, and that this defendant has never become further liable to pay any part of the purchase price of said machinery under or by virtue of the terms of the said contract or otherwise."

He also says he has fully performed on his part, but that the plaintiff has not performed on its part, in that it has never shipped the machinery, etc., to Syracuse; that it has not come there and the de-

fendant has had no opportunity of examining same; that it has never been installed or in successful operation. The complaint was silent, as was the contract, on the subject of making the machinery.

[1] I think the agreement clearly, in effect, provides that the machinery and fixtures were not to be put on the cars or shipped to Syracuse until ordered shipped out by the defendant, which defendant agreed to do on or before October 1, 1908. He never gave the order. In that regard the defendant did not perform. The plaintiff kept urging the defendant to perform by ordering the property, and defendant made the excuse that his plant was not ready for the machinery. There was some talk of an extension, but no extension was in fact agreed on. An extension to January 1, 1909, was drawn up; but the defendant did not execute or deliver it. However, if there was such an extension, the defendant did not order the property shipped and remained in default.

The agreement provided that title to the property should remain in the party of the first part until fully paid for. It also contained the following:

"The second party agrees to receive such machinery and equipment; to pay all freight damage and other such expenses; to erect and equip a plant to obtain the best results in working said machinery and equipment."

It is true, of course, that defendant did not have an opportunity at Syracuse to examine the property, etc.; but he did not order it shipped or sent on.

I do not think the plaintiff was obligated to put the goods on the cars or send them to Syracuse until ordered so to do by the defendant. Clearly the defendant was guilty of a breach of his contract. He agreed to purchase the property and pay for it and to order it shipped by October 1st. This he failed and, in effect, refused to do. However, the plaintiff did not put the machinery, etc., in the cars, and hence never delivered them. The title was to remain in the plaintiff until the machinery and fittings were paid for, and as a result the title never passed to the defendant. The law does not demand idle ceremonies, and it was unnecessary for the plaintiff to put this property on the cars. It had 30 days in which to assemble and ship it after the order to ship was given. He was not to put it on the cars until ordered so to do. Not having ordered it shipped to Syracuse as he agreed to do, I do not see how the defendant can complain that he had no opportunity to examine.

[2] The question is one of damages simply. Can plaintiff recover the balance of the purchase price as damages, or is the measure of damages the difference between the price agreed to be paid on delivery and acceptance—that is, the contract price—and the market value of the articles at the time and place of delivery? There is no evidence in this case that these articles had any market value at the place of delivery or at any place. There is no evidence in this case of the actual value or cost of making this machinery. It appears from the agreement that these articles were made under a patent, and the agreement to sell also conferred the right to use such machinery in certain territory mentioned. Patented machinery for making concrete

blocks is not a staple article of commerce like cloth, clothing, food, groceries, ordinary implements, and the like. Still it would have a certain kind of market value undoubtedly, but limited. Connected with a limited right to use and operate in a circumscribed territory, it cannot be said to have the ordinary market value of articles of commerce.

In Van Brocklen v. Smeallie, 140 N. Y. 70, 75, 35 N. E. 415, 416, the court held:

"In this court the rule of damages for a breach by the buyer of a contract for the sale of personal property is perfectly well settled. Dustan v. McAndrew, 44 N. Y. 78; Hayden v. Demets, 53 N. Y. 426. In each of these cases it was ruled that the vendor of personal property has three remedies against the vendee in default. The seller may store the property for the buyer and sue for the purchase price; or may sell the property as agent for the vendee and recover any deficiency resulting; or may keep the property as his own and recover the difference between the contract price and the market price at the time and place of delivery. In the second of the decisions last cited, it was further held that the rule applied, not only to cases where the title passed at once, but also to cases where the contract was executory but there had been a valid tender and refusal."

Assuming this to be the correct rule where the agreement is one of sale and purchase in præsenti, one question is whether the clause in the contract retaining title to the machinery in the vendor until paid for operates as an election on the part of the vendor to retain the property as its own (in case of a breach by the vendee) and, as damages in case of failure to perform, rely on the difference between the contract price and the market price at the time and place of delivery or the profit that would have accrued if the machinery had been accepted. Credit for a part of the purchase price was contemplated and provided for. The clause for retention of title was in the nature of security for the payment of the purchase price. This provision was not intended to have any relation to the measure of damages in case of refusal to perform by the vendee.

In National Cash Register Co. v. Schmidt, 48 App. Div. 472, 62 N. Y. Supp. 952, the court, per Willard Bartlett, J. (now of the Court of Appeals), held that, where a person agreed to purchase a cash register, the title not to pass until the purchase price was paid in full, but countermanded the order and refused to accept the register, that the vendor's only remedy was an action to recover damages for the vendee's refusal to accept, and that the vendor's measure of damages was the difference between the contract price and the market value of the register at the time and place of delivery, and that in the absence of proof of any such difference the vendor was entitled to only nominal damages. But in that case it is quite apparent that the cash register had a market value. In the case at bar the machinery was to be ordered shipped before shipment and on or before October 1, 1908; it was to be sold f. o. b. on the cars at Mt. Gilead, Ohio. In fact, it was not in existence. It was a special order of, I assume, special machinery. The plaintiff holds it in storage ready for delivery and shipment at the place agreed.

In Gray v. Booth, 64 App. Div. 231, 237, 71 N. Y. Supp. 1015, the authority of the case of National Cash Register Co. v. Schmidt is questioned and its holding is not followed.

In Hayden v. Demets, 53 N. Y. 426, and Dustan v. McAndrew, 44 N. Y. 78, the question was one of damages recoverable by the vendor on refusal of the vendee to accept according to the contract, and while the court laid down the rule that, where the purchaser under a contract of sale refuses to accept and pay for the property, the vendor has three remedies: (1) To hold the property for the purchaser and recover of him the entire purchase price; (2) to sell it after notice to the purchaser, as his agent for the purpose, and recover the difference between the contract price and that realized on the sale; and (3) to retain it as his own and recover the difference between the contract price and the market price at the time and place of delivery—the facts stated show that in each case there was a sale in præsenti, and that, while a future delivery was provided for, payment was to be made on delivery, and the possession as well as title was to vest absolutely in the vendee. In short, it was a sale and not an agreement to sell in the future, title expressly retained in the meantime and until full payment of the purchase price.

In Todd v. Gamble, 148 N. Y. 382, 42 N. E. 982, 52 L. R. A. 225, the subject of the contract was silicate of soda to be manufactured and delivered from time to time during a year and paid for as delivered. It appeared that the article was perishable in its nature and had no real general market value; there being but a limited demand, and it being an article usually manufactured in quantities on orders by consumers. The vendee having received a part and refused to accept the remainder of the quantity bargained for, it was held the vendor could recover as damages the difference between what it would cost him to manufacture and deliver the article under the contract and the contract price. It was not suggested that the measure of damages was the contract price of the article; but the silicate of soda to fill the contract was not in fact made and hence tender could not be made and the property held in store for the vendee.

In the case at bar the machinery, etc., was in fact manufactured or caused to be manufactured by the vendor. Where there is a present absolute agreement of purchase by the one and an absolute agreement of sale by the other at a fixed price, delivery and payment to be made at a future day, it seems reasonable and just that, on tender by the vendor at the time and place of delivery and refusal by the vendee to accept, the vendor may store the property so sold and purchased for the vendee and recover the price agreed to be paid. But where there is an agreement to sell in the future and an agreement to purchase in the future, the vendor retaining title until the whole purchase price is paid, certain credit for a part of the purchase price forming a part of the agreement to purchase, we have a different case. The vendor here has retained the title, and the vendee refuses to order; that is, purchase the property as he agreed to do. The vendor has it on his hands. In this case it was a special order of specific machinery which, I think it fair to assume, had no general or real market value. The vendee has not actually purchased the property; he has only agreed to purchase. He refuses to purchase. He agreed to pay a specified sum for the property, and this he refuses to do.

In Todd v. Gamble, supra, the court quoted with approval the language of Baron Alderson in Hadley v. Baxendale, 9 Exch. 341, viz. :

"Where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive, in respect of such breach of contract, should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it."

I think this a reasonable and a sensible rule, but the difficulty is how to apply it in this case. As the evidence shows this was a special order according to certain plans and specifications, and defendant agreed to order it on or before a certain day, and it was clearly contemplated, although not written in the contract, that it was to be made to fill the order of shipment to be given at a future day, and defendant agreed to order and pay a certain price, and plaintiff actually made the machinery and has it for the defendant, who has refused to order it and in effect refused to take it, may we not say that the damages for the defendant's breach contemplated by the parties was the value of the property as fixed by their agreement?

In 2 Joyce on Damages, § 1654, it is said:

"The measure of damages for refusal of the purchaser to accept and pay for goods under a contract of sale is the difference between the contract price and market price or value of the goods at the time and place of delivery; or on the day stipulated for delivery, or at the time of the breach, or at the time of the seller's offer to deliver them, or at the time and place of refusal to accept, or at the time of commencing suit, or the profit which would have been made had the goods been taken and paid for according to contract and not the balance of the purchase money, or the difference between the contract price and the actual value at the time. And the above rules exclude the recovery of the full contract price upon the breach. But the measure of damages is not necessarily the difference between the contract price and the actual value of the property. Again, the rule may be stated in another form as follows: The measure of damages in an action for nonacceptance of property sold or contracted for is the amount of the actual injury sustained by the plaintiff in consequence of such nonacceptance, which is ordinarily the difference between the price agreed to be paid for it and its value where such price exceeds its value; but, where the property is utterly worthless in the hands of the plaintiff, the whole price agreed to be paid should be recovered."

On this last proposition Allen v. Jarvis, 20 Conn. 38, is cited.

In Tufts v. Bennett, 163 Mass. 398, 40 N. E. 172, it was held that:

"Where the seller sues the purchaser for the contract price of goods he has refused to accept, which goods were to be paid for by installments, and the title to which was not to pass until the contract price was fully paid, the measure of damages is the difference between the market value at the time and place of delivery and the contract price, and, no evidence having been introduced of that difference, the court can award nominal damages only."

In view of the authorities cited, the authority of which Joyce in his work accepts, I am constrained to hold that the damages properly recoverable in this case would be the difference between the cost of making the machinery and its actual value at the time and place of delivery. We have no proof of the actual value at that time and place or at any time, except as we assume the agreed price to be evidence

of its value, and we have no evidence of the cost of making, or of the material and labor put into it. I confess that I see equities on both sides of the question and am not at all sure of the accuracy of my conclusions. I am pointed to no case like this in some of its important features; for instance, the limitation on use to a prescribed territory and the agreement to order in the future with the statement in the contract, in effect, that the property is "to be sold," not delivered f. o. b. on cars at Mt. Gilead, Ohio, and ordered at a future day. To give judgment for the entire purchase price in the absence of an out and out sale would seem like enforcing in a way the specific performance of an agreement to purchase personal property in a case where the vendor on receiving payment for the property is to do certain things. It is true that words importing a present sale appear in some parts of this agreement, but it is to be taken altogether and read as one whole. We find the following:

"Said machinery and fittings is sold for the sum of," etc.

Also the words:

"And upon the payment of all such purchase money, including all notes and renewals of notes that may be given as a part of the purchase price, the title to said machinery and equipment and the right to use and operate the same in said territory will at once vest in said second party, his heirs," etc.

The contract also restricts the right to assign the contract and rights under it until payment of the full purchase price.

On the whole, I am compelled to hold that, while there has been a clear breach of the contract by defendant, the true measure of damages is not the price agreed to be paid, and that plaintiff is entitled to recover under the proofs in the case nominal damages only

There will be findings and a judgment accordingly.