### RITZ CYCLE CAR CO. v. DRIGGS-SEABURY ORDNANCE CORP.

(District Court, S. D. New York.   November 6, 1916.)

1. TRADE-MARKS AND TRADE-NAMES ⊙=93(3)—TRADE-MARK—RIGHT TO.
    While the mere adoption of trade-mark confers no property right, a single instance of user, with accompanying circumstances showing an intention to continue the use of trade-name or trade-mark is sufficient to establish a right to its use.
    [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 106; Dec. Dig. ⊙=93(3).]

2. TRADE-MARKS AND TRADE-NAMES ⊙=40—PERSONS ENTITLED TO ATTACK.
    Where complainant adopted a trade-mark for motor cars, it intended to place on the market and had built two cars bearing such trade-mark, defendant, having contracted to build cars so marked for complainant, cannot, particularly as it thereafter disposed of cars bearing such trade-mark, and as complainant had spent large sums in introducing the trade-mark to the trade, deny complainant's right to the same.
    [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 45; Dec. Dig. ⊙=40.]

3. TRADE-MARKS AND TRADE-NAMES ⊙=40—CONTRACTS—BREACH.
    Where defendant agreed to manufacture motor cars for complainant, the same to be delivered monthly, and time was of the essence of the contract, defendant's failure to deliver one installment of the cars according to contract warranted complainant in rescinding the whole contract, where slight changes in the structure of the cars had not necessitated a delay, and defendant had requested none, while payments for which complainant was liable had not accrued, and so defendant was not entitled to dispose of the cars under the provision allowing it to use complainant's trade-mark in case of the latter's breach.
    [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §. 45; Dec. Dig. ⊙=40.]

4. TRADE-MARKS AND TRADE-NAMES ⊙=98—DAMAGES—MEASURE.
    Where defendant sold goods under complainant's trade-mark, any profits made by defendant in violation of the trade-mark rights of complainant are recoverable, including damages to its business, regardless of any profit which would have been made by complainant.
    [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 112; Dec. Dig. ⊙=98.]

5. TRADE-MARKS AND TRADE-NAMES ⊙=98—VIOLATION—DAMAGES.
    Defendant agreed to manufacture motor cars for complainant, which complainant had contracted to sell to the trade. Defendant breached its contract, whereupon complainant rescinded the entire contract, and defendant made sales, wrongfully using complainant's trade-mark. *Held*, that while the profits which complainant would have made on the cars should be taken into consideration, yet as complainant is entitled to recover any profits made by defendant, as well as damages for injuries to

---

⊙=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

its business, the difference between complainant's manufacturing and selling prices are not necessarily the measure of damages, but the profits should be ascertained by an accounting.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 112; Dec. Dig. ☞98.]

6. DAMAGES ☞22—BREACH OF CONTRACT.

Where defendant breached a contract to manufacture motor cars for complainant, damages recoverable are those flowing directly and proximately from defendant's breach.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 59–61, 63; Dec. Dig. ☞22.]

In Equity. Bill by the Ritz Cycle Car Company against the Driggs-Seabury Ordnance Corporation, which cross-complained. Decree for complainant.

Rockwood & Haldane, of New York City (Edgar T. Brackett, of Saratoga Springs, N. Y., and Nash Rockwood and Charles A. Winter, both of New York City, of counsel), for complainant.

Cadwalader, Wickersham & Taft, of New York City (Cornelius W. Wickersham and John F. Charlton, both of New York City, and Francis H. McAdoo, of Washington, D. C., of counsel), for defendant.

HAZEL, District Judge. This action in equity was brought to enjoin the defendant corporation from infringing complainant's common-law trade mark or name "Ritz," an abbreviation of Ritzwaller, the name of complainant's president, adopted in September, 1913, and applied to cycle cars or light automobiles. The circumstances are peculiar, in that the parties entered into a written agreement by which the defendant was to manufacture cars or automobiles of complainant's design, making deliveries in installments. Upon failure by complainant to comply with the conditions of the agreement, the defendant was to have the right to market and sell the cars manufactured by it, using the trade-mark "Ritz" and applying the proceeds on any claims, arising out of the breach or annulment of said contract, as the defendant might have against complainant; and complainant agreed in the event of a breach to assist defendant in marketing the cars with respect to any unfulfilled contracts of sale.

Defendant by its answer, among other things, denied the establishment of a valid trade-mark in the name "Ritz" as applied to cycle cars or automobiles, and admitted the sale of 205 cars or automobiles bearing that name after the contract was broken, justifying its action on the ground of complainant's nonpayment of certain promissory notes, a part of the consideration for the making of the agreement. The answer put in a counterclaim for two promissory notes, of $2,500 each, and for the price of a car or automobile manufactured for demonstrating purposes. A reply to the answer denied that complainant had broken or annulled the agreement, and alleged that it was first broken or rescinded by defendant; that accordingly no right inured to defendant under the agreement to market or sell any cars or automobiles bearing said adopted trade mark or name. Damages for breach of the contract were also demanded.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The issues presented by the proofs may be summarized thus: Had complainant established a valid trade-mark in the name "Ritz" at the time the contract was made? Was a property right created by its adoption and use? Was there such failure by complainant to perform the contract as gave defendant the right under paragraph 13b of the contract in question to sell or market cars and apply the proceeds to claims for labor or materials used in their construction? Are the counterclaims properly interposed as an offset to complainant's right of recovery?

The evidence shows that, although the trade-mark was not known to the public to any extent by user, it had nevertheless been exploited, catalogued, photographed, and advertised, in trade journals and otherwise, at much labor and expense, preparatory to the establishment of a business for manufacturing and selling cars or automobiles impressed with it. The said agreement refers to the cars as Ritz cars, or Ritz cycle cars, and, prior to its making, two demonstration cars, model A and model B, were completed, which were designated as Ritz cars; model B being shipped to defendant for inspection in March, 1914. The contract provided for the manufacture of a car to be known as model C, which, however, in general appearance and design was to be of the type of model B. Complainant had contracted to sell and deliver to the Ohio Motor Company 100 Ritz cars to be manufactured by defendant, and was quite actively engaged in negotiating sales with prospective buyers and in establishing agencies at the date of the contract and up to the time of its breach.

Although it is unnecessary to specify all the details of the agreement under which the cars were to be manufactured, it should be understood that 500 Ritz cycle cars were to be manufactured by defendant and delivered in lots of approximately 100 per month, the first lot to be delivered by the end of June, 1914; that the price of construction agreed upon was $425, less a discount of $120; that the complainant was to deposit, and did deposit, with the defendant $10,000, payable $5,000 in cash, and the balance in two promissory notes, of $2,500 each, one payable in three months, and the other in four months, from date, to cover the cost of manufacturing tools required in the construction of the cars; that the complainant was to furnish detail drawings and specifications and place an inspector in the factory to approve materials; and provision was made for changes in construction and design "to efficiently complete said cycle cars."

There was much dispute as to who first terminated the contract. The defendant claims that complainant was responsible for the breach, and in proof thereof points to a letter, dated July 17, 1914, stating in substance that, on account of defendant's prior rescission, complainant was compelled to terminate its part of the contract. Hence it is contended that paragraph 13b became operative, regardless of who first broke the contract, but that it was in fact broken when complainant failed to pay its note for $2,500 falling due July 8, 1914. In opposition to this contention it is insisted that the promissory note was not paid because the defendant had previously failed to make delivery in June of approximately 100 cars, or of any cars.

To this contention rejoinder is made by defendant that such delivery was delayed by complainant's failure to seasonably furnish detailed drawings and specifications, as provided by paragraph 9 of the contract, and that complainant had ordered changes, or acquiesced in changes, which materially delayed completion of the cars. Did complainant's conduct relieve defendant from performance or render performance by defendant impossible? Did defendant's conduct, resulting in the repudiation of the contract, deprive it of the right to sell cars under and by the name of Ritz?

[1, 2] Considering the question of a property right in the trade-mark "Ritz": It is undeniable that the general rule is that there must have been a user of an adopted trade mark, name, or symbol in connection with the goods or article to which it is applied, as its mere adoption, even with an expenditure of money in preparation for its use, confers no property right. But in this case something more than a mere adoption and exploitation of the trade-mark is evidenced. Not only was the trade-mark affixed to two completed cars at the time the contract was entered into, but reference is made therein to Ritz cars, amounting to a recognition of complainant's property right to the name. A single instance of user, with accompanying circumstances showing an intention to continue the use of the trade name or mark, is sufficient to establish a right to its use. Hopkins on Unfair Trade, § 18. Sebastian, in the Law of Trade-Marks, quoting from Romilly, M. R., says:

"'The interference of a court of equity could not depend on the length of time the manufacturers had used it,' but that 'from the time of their commencing the user of their trade-mark they became entitled to the protection of the court against any other persons using the same, so that purchasers might be induced to purchase the goods of other persons as theirs.'"

But as between this complainant and defendant it was unnecessary that the trade-mark should have been established by user or have been known to the public for any definite length of time. Its recognition by defendant and the subsequent sale of cars bearing it operated as an estoppel of a denial of a property right therein. There are cases, it is true, which broadly hold that a trade-mark fails to eventuate in a property right unless it is used, but in nearly all such cases its origin or use was in dispute between rival claimants. Hopkins on Unfair Trade, § 18.

[3] As to the merits: Although many changes and modifications were made in the drawings and specifications of various parts of the Ritz automobile, such changes pertained mostly to unimportant parts, and did not delay construction. Some of the changes were suggested by defendant's president, and others by its foreman, while still others were suggested by complainant's inspector or engineer; but, before being made, they were all discussed with defendant's president and approved by him. Parts already manufactured were not changed, and certain of the changes were not to affect the cars to be delivered in the first installment. No objection was made by defendant that the changes would delay the initial delivery. There was much dispute between the engineers employed by complainant and defendant as to the char-

acter of the changes, and as to whether they in fact delayed the delivery of the first lot of cars; but it is not deemed necessary to itemize them, as it has been proven that they were not the actual cause of the delay. The most important changes in the drawings, it seems to me, related to the running board, the core box, and the valve and exhaust pipe of the Driggs-Seabury motor, which at first it was contemplated using; but as defendant's president agreed to such modifications, and as the first 100 cars were to contain a motor manufactured by defendant, any delay because of enlargement of the valve had no especial bearing upon failure to make the first delivery.

Time was of the essence of the contract—a condition precedent—and under the doctrine of Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366, upon nonperformance of such condition the party aggrieved had the right to repudiate the entire contract. As it does not appear that defendant at any stage of the preparation of the drawings or modifications requested any extension of time, the asserted delay and abrogation of the contract by refusal to deliver the June installment of cars was, I think, due to other causes. At this time complainant was arranging for deliveries to prospective purchasers, and presumably, if defendant had expressed its inability to complete the cars if changes were made, they would have been left unchanged. Hence, in my opinion, defendant's failure to deliver 100 cars by the end of June, 1914, was not waived, and the contract was broken by it without any fault attributable to complainant.

It appears that complainant failed to make payment for the demonstration car manufactured for it by defendant, and of the promissory note due on July 8, 1914; that later, on July 17, 1914, the parties met to compose their differences, complainant suggesting a new arrangement as to delivery of cars; but, as defendant would not assent to such arrangement, demand was made, under the agreement, for the dies and tools necessary in the construction of the cars. Upon defendant's refusal to surrender the same, notice of repudiation of the entire contract was given. The language of Judge Rogers in Frankfurt-Barnett Co. v. Wm. Pryn Co., Ltd., 237 Fed. 21, —— C. C. A. ——, decided last July, is applicable. He said:

"The contract into which these parties entered was a contract between merchants, and time is of the essence of such contracts. As the Supreme Court in Norrington v. Wright, 115 U. S. 188 [6 Sup. Ct. 12, 29 L. Ed. 366], held, an agreement regarding the delivery of the goods is ordinarily to be regarded as a warranty or condition precedent upon the failure or nonperformance of which the party aggrieved may repudiate the whole contract. Under this contract, however, the goods were not to be delivered at one time, but in installments. Such contracts are sometimes referred to as involving divisible promises. There is authority for saying that, where the installments extend over a considerable period of time, a default either in delivery or in payment does not necessarily and in all cases discharge the contract, although it necessarily gives rise to an action for damages. * * * But in Norrington v. Wright, supra, the Supreme Court came to the conclusion that such contracts are entire, and a failure to make the delivery of a single installment gives the other party the same right to rescind the whole contract that he would have had if it had been agreed that all the goods should be delivered at once."

237 F.—9

Failure to pay for the demonstration car and the promissory note, which did not become due until after the first installment of cars was to have been delivered, did not excuse performance by defendant, and accordingly paragraphs 13a and 13b did not become operative, and the cars sold by defendant under the trade-name "Ritz," without complainant's consent, were infringements upon the latter's property right and acquirement.

[4, 5] Both sides have requested an indication from the court to the master as to the measure of damages which should be allowed herein. Defendant contends that the loss of sales of cars to Simmons is not a proper element of damages; that recovery is limited to the loss of gains and profits that complainant would have made, had the contract been fulfilled; and that defendant's profits only from the sale of cars impressed with the trade-mark are recoverable. Counsel for complainant, on the other hand, contends for the right to recover the profits that complainant would have made from cars bearing the trade-mark, regardless of any profit made by defendant; that, as to the breach arising from failure to deliver the balance of the cars over and above the cars which the defendant sold in violation of trade-mark rights, complainant should recover the profit of $35 per car, which, according to the evidence, would have resulted if the contract in question had been fulfilled. In a case such as this, wherein the measure of damages depends upon the particular facts, it is difficult to specify the exact rule. While it is true that there is evidence showing the manufacturing price of a car to be $305, and the selling price to customers $340, indicating a profit of $35, yet it is not at all certain that the cars will all be sold at such figure. The price which Simmons agreed to pay for 100 cars, together with the price to customers specified in the contract, will probably be taken into consideration; but the uncertainty as to marketability must also be considered, testimony in regard to which has not as yet been given by defendant.

No hard and fast rule can be indicated for the master to follow. It may be stated, however, that, as I understand the law, any profits made by defendant in violation of the trade-mark rights of complainant are recoverable, regardless of any profits made by complainant. But see Wolf Bros. & Co. v. Hamilton-Brown Shoe Co., 206 Fed. 611, 124 C. C. A. 409. Complainant's profits would ordinarily not be the true measure of damages for infringement of trade-mark rights. The manufacturing and selling prices specified in the contract, or the profits defendant expected that complainant would realize on sales to customers, are believed not to be the true criteria of recovery. As recovery has been invoked in equity and not at law, the ascertainment of profits must be in the nature of an accounting. 28 Am. & Eng. Encyc. of Law (2d Ed.) page 437; Browne on Trade-Marks (2d Ed.) page 506. It is true such rule opens the door for proof that the infringing cars were sold by defendant at a loss and not at a profit; but as an offset, it may be remarked, complainant has the right to recover profits, even though the cars were not sold at a profit by it.

[6] The damages recoverable in consequence of the breach of the contract by defendant's failure to deliver the cars or automobiles are those which flow directly and approximately from it. The contract, I think, is to be treated as one to manufacture the cars, and the damages, no doubt, may be based on the cost of production and the price contemplated on resale. There are adjudications holding that the measure of damages to be applied in such a case is the difference between the contract price and the market value of the article; but the cars in question were of an unusual type at the date of the contract, and the market price or value difficult of ascertainment. Todd v. Gamble, 148 N. Y. 382, 42 N. E. 982, 52 L. R. A. 225. The cardinal rule is thought to be that a complainant, who is prevented from selling an article to be manufactured by reason of defendant's failure to perform the contract, is to be recompensed for any loss sustained through loss of profits, or even of the opportunity to make profits. In the application of this rule, however, care must be taken to exclude any anticipated good bargains, advantages of resale, and loss of other contracts, because such benefits were manifestly not in the minds of the parties at the time of making the agreement.

Inasmuch as there is to be a reference to a master to ascertain and report the damages, I do not think that anything further should be said by me in relation to the rule of damages to be followed, especially as testimony is to be given by defendant bearing upon this issue. The master must be guided by the facts, adapting thereto the particular rule of damages which in his judgment is warranted. The order of reference to the master should contain a provision that the testimony already taken herein relating to damages and profits be considered by him, together with such additional testimony as may be offered by either party to this action, including the testimony bearing upon the counterclaims contained in the answer relating to making a demonstration car and failure to pay a promissory note given for the construction of another, as such counterclaims fairly arose out of the transaction which is the subject of this suit.

A decree may be submitted, with costs, in accordance with the foregoing views.